UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY MARCUS #07-A-7130,

|                          |
|--------------------------|
| Plaintiff,               |

-against-

ANTHONY J. ANNUCCI-ACTING
COMMISSIONER OF DOCCS, et al.,

Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-06234 (PMH)

PHILIP M. HALPERN, United States District Judge:

Anthony Marcus ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action under 42 U.S.C. § 1983 by way of a Complaint filed on August 7, 2020. (Doc. 2, "Compl.").[1] Plaintiff maintains that while incarcerated at Green Haven Correctional Facility in Stormville, New York ("Green Haven"), five employees of the New York State Department of Corrections and Community Supervision ("DOCCS")—specifically, Acting DOCCS Commissioner Anthony J. Annucci ("Annucci"), DOCCS Director of Special Housing Donald Venettozzi ("Venettozzi"), Former Green Haven Superintendent Jamie LaManna ("LaManna"), Hearing Officer Eric Gutwein ("Gutwein"), and Correction Officer L. Malave ("Malave," and collectively, "Defendants")—violated his constitutional rights in connection with disciplinary charges levied against him in October 2018. (*See generally id.*).

Defendants filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on August 26, 2021. (Doc. 35; Doc. 36, "Def. Br."). Plaintiff's opposition papers were due on September 24, 2021. (Doc. 34). Instead of submitting opposition papers, however, Plaintiff requested leave to file an Amended Complaint; the Court granted that request and directed that the

---

[1] Citations to the Complaint correspond to the pagination generated by ECF.

Amended Complaint be filed on or before October 15, 2021. (Doc. 38). That deadline was subsequently extended, at Plaintiff's request, to October 29, 2021. (Doc. 40). On November 2, 2021, however, Plaintiff filed a letter "request[ing] a withdrawal of the Amended Complaint and [that] the decision be made from the original complaint." (Doc. 41). Two days later, on November 4, 2012, the Court directed, *inter alia*, that "Plaintiff's opposition to the pending motion to dismiss shall be served and filed by December 3, 2021." (Doc. 43). A copy of that Order was mailed to Plaintiff on November 4, 2021. (Nov. 4, 2021 Entry). Nothing further has been filed.

For the reasons set forth below, Defendants' motion is GRANTED IN PART.

## BACKGROUND

Plaintiff, on October 12, 2018, was placed in keeplock and charged with conspiring to bring narcotics into Green Haven. (Compl. at 3). The Misbehavior Report—attached to the Complaint—charged Plaintiff with four violations: (1) Drug Possession; (2) Smuggling; (3) Facility Visitation Violation; and (4) Phone Program Violation. (*Id*. at 18). The narrative charged that Plaintiff:

> solicited from and conspired with others to smuggle contraband into him at Green Haven CF. On the above date and approximate time visitor Angelique Marcus was interviewed by Investigators from NYSDOCCS OSI Narcotics Unit. During the interview, she voluntarily surrendered a (1) blue balloon. Said balloon contained one clear plastic baggie containing a tan powdery substance. The tan powdery substance was field tested using NIK Test Kit L, by Certified NIK tester C. Meigs. The field test[] yielded a positive test . . . [for] heroin. Said heroin had an aggregate weight of 7.5 grams.
>
> As part of an ongoing investigation, inmate Marcus did activate his inmate Pin and place a phone call to his visitor Angelique Marcus on 09/30/18 at 20:12. During this phone call inmate Marcus can be heard directing his visitor to "put it up and everything[.]" Visitor Marcus responded, ["]its little, like a quarter size." Inmate then asked, "what is it". Visitor Marcus stated, "its sugar . . . baby powder." Based on my training and experience this phone call contains coded conversation regarding secreting contraband inside of his visitor's body and code words used for contraband drugs. The aforementioned is a result of an investigation conducted by the

> NYSDOCCS Office of Special Investigations, Narcotics Unit. END
> OF REPORT.[2]

(*Id*. at 18). The Misbehavior Report was signed by Malave. (*Id*.).

The hearing, presided over by Gutwein, was convened on October 16, 2018. (*Id*. at 4). Gutwein read the Misbehavior Report into the record and Plaintiff pled not guilty to the charges contained therein. (*Id*.). It was at this point that Plaintiff asked Gutwein for a number of documents that Plaintiff "needed to present his defense to the charging document." (*Id*.). The documents sought were copies of: (1) Plaintiff's visitor log from October 12, 2018; (2) Plaintiff's phone log from September 30, 2018; (3) photographs of the balloon and substance excised therefrom; (4) the registration that each visitor must sign and bring with them onto the visiting room floor; and (5) the record showing the time, location, and date of all phone calls made with Plaintiff's PIN. (*Id*.). Plaintiff requested these items from Gutwein because Plaintiff's tier assistant "failed to provide" them. (*Id*.). Plaintiff received none of these items. (*Id*. at 4-5, 13-14). Plaintiff objected during the hearing on the grounds that: (1) the Misbehavior Report was "identical" to a report filed against another inmate; (2) "none" of Malave's testimony was contained in in the Misbehavior Report; and (3) Malave did not answer a question regarding her knowledge of code words. (*Id*. at 5-6).

Gutwein found Plaintiff guilty of the conduct described in the Misbehavior Report on November 26, 2018 and imposed the following penalties: (1) forty-five days' keeplock confinement; (2) ninety days' loss of recreation, packages, commissary, and phone; (3) one hundred eighty days' loss of visitation privileges; and (4) a recommendation that Plaintiff be docked two months' good time credit. (*Id*. at 6-7, 22). Plaintiff appealed this determination to Venettozzi, who affirmed Gutwein's decision on January 11, 2019. (*Id*. at 7, 106).

---

[2] The narrative contained in the Misbehavior Report is a single, continuous block without indentation of any kind. The Court, for ease of reference, has broken the block into two sections.

Plaintiff, in turn, filed an action under Article 78 of the N.Y. C.P.L.R. in the New York State Supreme Court, Albany County. (*See id*. at 7-10; *see also id*. at 49-83). During the pendency of that proceeding, DOCCS' counsel wrote a letter to the Supreme Court: (1) explaining that the adjudication was reversed and expunged from Plaintiff's disciplinary history; and (2) requesting that the "proceeding be dismissed as moot, inasmuch as the agency has granted petitioner all the relief to which he is entitled." (*Id*. at 91). The reason for reversing and expunging the adjudication was that DOCCS "fail[ed] to maintain a complete electronic record of the hearing." (*Id*. at 89). The Supreme Court agreed with counsel's request and, on November 8, 2019, issued a Decision and Order concluding, in pertinent part, that:

> [b]ased upon the record, the petition is moot and respondents' request for dismissal should be granted as the determination finding petitioner guilty was administratively reversed and expunged from petitioner's disciplinary records.

(*Id*. at 117).

This litigation followed.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true

all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

Plaintiff's claims for relief proceed under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y.

June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The alleged violations here stem from the Eighth and Fourteenth Amendments. (*See generally* Compl. at 11-15).

I.   Personal Involvement: Annucci, Venettozzi, and LaManna

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). The fact that a defendant is a supervisor is not enough to impute personal involvement onto that person; rather, liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Plaintiff here failed to implicate Annucci, Venettozzi, or LeManna in any constitutional violation.

With respect to Annucci, Plaintiff maintains that Annucci was "legally responsible for the overall operation of" DOCCS throughout New York State and "failed to review" the hearing on appeal. (Compl. at 2, 14). As for LaManna, he is mentioned nowhere in the Complaint except the caption and in a paragraph explaining that he was Green Haven's Superintendent during the events outlined above. (*Id.* at 1-2). Even with the benefit of every conceivable inference alongside the broadest possible reading of the Complaint, it is clear that Annucci and LaManna have been named because of the positions they held in DOCCS and Green Haven, respectively. That is not enough to establish personal involvement. *See Smart v. Annucci*, No. 19-CV-07908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (explaining that "[m]erely being in the chain of command is not

enough to" plead personal involvement requirement); *Royal v. Annucci*, No. 16-CV-06517, 2017 WL 3207805, at *3 (S.D.N.Y. July 27, 2017) ("'[M]ere linkage in the prison chain of command' is insufficient to implicate a state commissioner of 'corrections or a prison superintendent in a § 1983 claim'" (quoting *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014).

As for Venettozzi, his role in the underlying facts is limited to reviewing and affirming Gutwein's decision. (*See* Compl. at 2, 7). Yet, "[a]s this Court observed recently, merely sitting in an appellate review capacity is insufficient to establish personal involvement because 'review and affirmation of the disposition of Plaintiff's disciplinary hearing is distinct from the alleged underlying constitutional deprivation.'" *Jackson v. Polizzi*, No. 20-CV-03105, 2021 WL 5909979, at *4 (S.D.N.Y. Dec. 13, 2021) (quoting *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *5 (S.D.N.Y. Nov. 19, 2021)); *see also Brown v. Annucci*, No. 19-CV-09048, 2021 WL 860189, at *9 (S.D.N.Y. Mar. 8, 2021) ("And as to Director Venettozzi, plaintiff alleges only that Venettozzi denied plaintiff's appeal . . . . Plaintiff pleads no facts suggesting Venettozzi was personally involved in any procedural due process violation."); *Smart*, 2021 WL 260105, at *5 ("[A]ffirming the outcome of a prison hearing was not sufficient to establish personal involvement." (citing *Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009)).

Annucci, Venettozzi, and LaManna are, therefore, dismissed from this action because Plaintiff failed to plead that these Defendants through their "own individual actions . . . violated the Constitution." *Tangreti*, 983 F.3d at 618 (internal quotation marks omitted); *see also Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) ("Plaintiff offer[ed] no factual allegations suggesting that Annucci was present for, knew of, or even had any reason to know about the alleged" constitutional violation); *Ford v. Aramark*, No. 18-CV-02696,

2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official where "the Complaint lack[ed] any *non-conclusory* allegation" about that official's personal involvement in any constitutional violation (emphasis in original)).

Thus, only the claims for relief against Malave and Gutwein remain.

II.   <u>Eighth Amendment: Conditions of Confinement</u>

Turning to the substantive claims for relief Plaintiff raises, reading the Complaint broadly, Plaintiff argues that being placed in keeplock and deprived of various privileges violated the Eighth Amendment. (*See* Compl. at 11-12).[3] "To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that

---

[3] Undergirding Plaintiff's claims against Malave are the allegations that she filed "a false charging document" against him and "rendered unreliable testimony" during the disciplinary hearing. (Compl. at 13). Assuming the truth of these allegations, Plaintiff fails to state a claim for relief under either the Eighth or Fourteenth Amendment against Malave. As to the former, neither fabricated charges nor false testimony implicate rights protected by the Eighth Amendment. *See Williams v. Dubray*, 557 F. App'x 84, 87 (2d Cir. 2014) ("[I]t is well settled that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *Boyd v. Doe #1*, No. 18-CV-01333, 2019 WL 5287973, at *5 n.8 (N.D.N.Y. Oct. 18, 2019) ("[A] false misbehavior report cannot form the basis of an Eighth Amendment claim."); *Singleton v. Caron*, No. 03-CV-00455, 2005 WL 2179402, at *7 (N.D.N.Y. Sept. 8, 2005) ("[A]n inmate plaintiff has no constitutional right to be free of false testimony by a corrections officer at a disciplinary hearing."), *adopted by* 2006 WL 2023000 (N.D.N.Y. July 18, 2006). As to the latter, "[a] correction officer's false misbehavior report or false testimony is actionable where an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" *Chavez v. Gutwein*, No. 20-CV-00342, 2021 WL 4248917, at *6 (S.D.N.Y. Sept. 17, 2021) (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015)); *see also Davis v. State of N.Y.*, No. 99-CV-00307, 1999 WL 1390247, at *2 (W.D.N.Y. Dec. 14, 1999) ("[A] claim of either a false misbehavior report and/or false testimony by a corrections officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated."). Assuming that Plaintiff seeks to pursue a claim under the first exception, a Fourteenth Amendment claim against Malave fails because Plaintiff offers no explanation about what, specifically, was false in the Misbehavior Report or testimony. *See Collins v. Ferguson*, 804 F. Supp. 2d 134, 139 (W.D.N.Y. 2011) ("[H]is bald assertion that Williams lied during the hearing—which in any event is not supported by any factual allegations and is utterly conclusory—does not state a claim against Williams."); *Phillips v. Goord*, No. 08-CV-00957, 2009 WL 909593, at *6 (W.D.N.Y. Apr. 1, 2009) (explaining that when claims for relief concern false reports, they "cannot be stated in conclusory terms and must be viewed skeptically").

the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (internal citations and quotation marks omitted). "Under this standard, the deprivation alleged by the prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.'" *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (alteration in original)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.").

Even if Plaintiff pled sufficiently the subjective requirement—and there is absolutely no basis upon which to believe that Malave, Gutwein, or any other Defendant did, in fact, act with deliberate indifference, *see Koehl v. Bernstein*, No. 10-CV-03808, 2011 WL 2436817, at \*16-19 (S.D.N.Y. June 17, 2011), *adopted by* 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011)—the deprivations here are not objectively serious. Plaintiff, in sum, complains that he: (1) was confined to keeplock housing for forty-five days; (2) lost recreation, packages, commissary, and phone privileges for ninety days; (3) lost visitation privileges for one hundred eighty days; and (4) lost good time credit of two months. (Compl. at 7). These facts—without more—do not suggest that Plaintiff was denied "the minimal civilized measure of life's necessities." *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (explaining that the Eighth Amendment protects "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" (internal quotation marks omitted)); *see also Baltas v. Erfe*, No. 19-CV-01820, 2020 WL 1915017, at \*26 (D. Conn. Apr. 20, 2020) ("An inmate has no Eighth Amendment right to visitation or to make social telephone calls."); *Abdur-Raheem v. Caffery*, No. 13-CV-06315, 2015 WL 667528, at \*4 (S.D.N.Y. Feb. 17, 2015) (dismissing Eighth Amendment claim premised on, *inter alia*, loss of packages for six

months); *West v. City of New York*, No. 13-CV-05155, 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (dismissing Eighth Amendment claim based on loss of recreation because while "exercise is one of the basic human needs protected by the Eighth Amendment," the plaintiff did not "allege the duration of the deprivation, the extent of the deprivation, the availability of other out-of-cell activities, or the opportunity for in-cell exercise" (internal quotation marks omitted)); *Abreu v. Lempke*, No. 11-CV-00839, 2013 WL 3475304, at *13 (N.D.N.Y. July 10, 2013) ("In the Eighth Amendment context, loss of good time credit does not amount to cruel and unusual punishment." (internal quotation marks omitted)); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011) (concluding, on summary judgment, that loss of commissary and phone privileges for ninety days does not constitute cruel and unusual punishment); *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) ("[I]t is not the right to recreation, but, rather, the right to exercise that the Eighth Amendment protects."); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 363 (S.D.N.Y. 1998) ("The mere placement in keeplock for 99 days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment.").

The Eighth Amendment conditions of confinement claim is, accordingly, dismissed.

III.   <u>Fourteenth Amendment: Procedural Due Process</u>

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "In order for Plaintiff to state plausibly a claim for violation of his Fourteenth Amendment procedural due process rights, he must: (1) identify a protected liberty interest; and (2) identify the procedure that deprived him of that liberty interest." *Linares*, 2021 WL 2689736, at *7 (citing *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021)). Here, construing the Complaint broadly, a procedural due process claim is stated against Gutwein.

A.  Prong One: Protected Liberty Interest

As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). Indeed, dismissal has been found appropriate where the period of confinement in relation to disciplinary hearings is shorter than one hundred one days unless the plaintiff presents facts establishing that the conditions imposed "atypical and significant hardship." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) ("[C]onfinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."); *Arriaga*, 2021 WL 5449849, at *7; *Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *9-10 (S.D.N.Y. June 23, 2021); *Reaves v. Williams*, No. 95-CV-00281, 1997 WL 10132, at *4-5 (S.D.N.Y. Jan. 10, 1997); *Rivera v. Coughlin*, No. 92-CV-03404, 1996 WL 22342, at *4-5 (S.D.N.Y. Jan. 22, 1996); *Rosario v. Selsky*, No. 94-CV-06872, 1995 WL 764178, at *4-6 (S.D.N.Y. Dec. 28, 1995).

Reading the Complaint broadly and giving Plaintiff every inference possible, the majority of the alleged deprivations—as presented—do not implicate any protected liberty interest. *See, e.g.*, *Jackson*, 2021 WL 2581340, at *10 (noting that loss of ninety days' recreation did not implicate a protected liberty interest); *Waters v. Prack*, No. 13-CV-01437, 2017 WL 1239642, at *6 (N.D.N.Y. Feb. 24, 2017) (observing that telephone and commissary privileges "do not constitute protected liberty or property interests"), *adopted by* 2017 WL 1187871 (N.D.N.Y. Mar.

30, 2017); *Stewart v. Schiro*, No. 13-CV-03613, 2015 WL 1854198, at \*13 (E.D.N.Y. Apr. 22, 2015) ("[L]oss of access to the commissary is the loss of a privilege, not the deprivation of a constitutional liberty interest, and accordingly does not qualify as an atypical and significant hardship."); *Branch v. Goord*, No. 05-CV-06495, 2006 WL 2807168, at \*3 (S.D.N.Y. Sept. 28, 2006) (concluding that the forty-five days' disciplinary confinement was "within the constitutionally accepted durational range"); *Leevon v. Goord*, No. 99-CV-06208, 2003 WL 22384787, at \*7 (W.D.N.Y. Sept. 4, 2003) (affirming that an inmate's "ability to receive packages" is "a privilege, not a right"); *Laws v. Cleaver*, 140 F. Supp. 2d 145, 154 (D. Conn. 2001) (holding that when an inmate's good time credits are restored there is "no § 1983 action").

The result is not so clear, however, with respect to Plaintiff's loss of visitation rights. Indeed, "[w]hile courts have uniformly rejected the claim that a liberty interest in prison visitation is inherent in the Due Process clause itself, state law has been found to create such an interest in certain contexts." *Hill v. Laird*, No. 06-CV-00126, 2016 WL 3248332, at \*10 (E.D.N.Y. June 13, 2016) (quoting *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337, 341 (S.D.N.Y. 1999) (internal citations omitted)); *see also Hernandez v. Sposato*, No. 14-CV-04593, 2015 WL 4097784, at \*4 (E.D.N.Y. July 8, 2015) ("[C]ourts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to *contact* visits." (emphasis added)); *Zimmerman v. Burge*, No. 06-CV-00176, 2008 WL 850677, at \*2 (N.D.N.Y. Mar. 28, 2008) ("[T]here is abundant case law establishing that inmates have no liberty or property interest in *contact* visits." (emphasis added)); *Kozlowski v. Coughlin*, 539 F. Supp. 852, 857 (S.D.N.Y. 1982) ("[W]e conclude that New York prisoners enjoy a constitutionally protected liberty interest in receiving visitors of their choice."). As Defendants did not address whether the deprivation of *all* visitation (i.e., both contact and non-contact) for one

hundred eighty days implicates a protected liberty interest—and the Court has found no precedent determining definitively whether the deprivation of all visitation implicates a liberty interest under federal or New York State law—the Court assumes without deciding, for the purposes of the extant motion only, that prohibiting Plaintiff from all visitation for one hundred eighty days implicated a protected liberty interest. *See Falls v. Campbell*, No. 17-CV-00035, 2019 WL 6251245, at *7 (S.D.N.Y. Nov. 21, 2019) (denying motion to dismiss due process claim where plaintiff was, *inter alia*, denied visitation for one hundred fifty days); *Hill*, 2016 WL 3248332, at *10 ("The Court's determination as to whether the denial of visitation . . . implicate[s] a liberty interest under *Sandin* is fact-specific." (internal quotation marks omitted).

Defendants may revisit this issue after the close of discovery.

B. Prong Two: Insufficient Process

With respect to the second prong—assuming that Plaintiff pled a protected liberty interest—the Second Circuit instructs that:

> [i]n a prison disciplinary hearing, due process rights provide that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him and afforded a reasonable opportunity to explain his actions. More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions.

*Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (internal citations and quotation marks omitted). In the particular case, the second requirement—that is, affording Plaintiff a reasonable opportunity to call witnesses and present documentary evidence—is at issue.

The Court notes that "prison officials must have the necessary discretion to keep the hearing within reasonable limits and . . . limit access to . . . documentary evidence," *Wolff v.*

14

*McDonnell*, 418 U.S. 539, 566 (1974), and that evidence "can be denied on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). However, where, as here, an inmate was placed in segregated housing, the Second Circuit instructs that "due process requires that he receive 'substantive assistance in preparing a defense.'" *Girard v. Chuttey*, 826 F. App'x 41, 45 (2d Cir. 2020) (quoting *Ayers v. Ryan*, 152 F.3d 77, 80-81 (2d Cir. 1998)). This assistance, "an obligation imposed by the Due Process Clause of the Fourteenth Amendment," *Amaker v. Goord*, No. 09-CV-00396, 2019 WL 1033511, at *2 (W.D.N.Y. Mar. 5, 2019) (internal quotation marks omitted), involves "gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses." *Elder v. McCarthy*, 967 F.3d 113, 126 (2d Cir. 2020) (quoting *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988)). "At a minimum, the assistant should perform the investigatory tasks which the inmate, were he able, could perform himself," *Amaker*, 2019 WL 1033511, at *2 (internal quotation marks omitted), and do so "in good faith and in the best interests of the inmate." *Mayo v. Lavis*, No. 11-CV-00869, 2016 WL 2756545, at *7 (W.D.N.Y. May 12, 2016) (quoting *Eng*, 858 F.2d at 898), *aff'd*, 689 F. App'x 23 (2d Cir. 2017).

Plaintiff alleges here that he asked his unnamed tier assistant for: (1) Plaintiff's visitor log from October 12, 2018; (2) Plaintiff's phone log from September 30, 2018; (3) photographs of the balloon and substance excised therefrom; (4) the registration that each visitor must sign and bring with them onto the visiting room floor; and (5) the record showing time, location, and date of all phone calls made with Plaintiff's PIN. (Compl. at 4). These items, according to Plaintiff, would have supported his "plea of not guilty" to the charges against him. (*See id*. at 13-14). The tier assistant did not, however, procure these items for Plaintiff's defense. (*Id*. at 4). Reading the Complaint broadly and giving Plaintiff the benefit of every inference, he complains that Gutwein—after learning that the tier assistant failed to provide Plaintiff with any of the evidence

requested—failed to secure the evidence himself. (*See id*. at 4-5, 11, 13-14). The Court cannot, without a more developed factual record, determine as a matter of law whether Gutwein's actions satisfied the dictates of due process with regard to Plaintiff's right to present documentary evidence in his own defense. *See Polizzi*, 2021 WL 5909979, at *6; *Mena v. Gutwein*, No. 19-CV-03882, 2020 WL 5370708, at *5-6 (S.D.N.Y. Sept. 8, 2020) (denying motion to dismiss procedural due process claim against hearing officer who, *inter alia*, did not "provide an alternative hearing assistant" after being notified of inadequate assistance and "did not provide plaintiff with the requested documents" the assistant failed to procure); *see also Brooks v. Prack*, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014) (denying motion to dismiss procedural due process claim because the court could not conclude, from the face of the complaint, whether the hearing officer was justified in excluding certain evidence).

In light of the foregoing, the motion to dismiss the Fourteenth Amendment procedural due process claim against Gutwein is denied.

IV.   Intracorporate Conspiracy

The final claim insists that Defendants entered into a conspiracy to deprive Plaintiff of his constitutional rights. (*See* Compl. at 12-15). To survive a motion to dismiss, Plaintiff must allege facts suggesting plausibly that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Eldars v. State Univ. of N.Y. at Albany*, No. 20-2693, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) ("To state a claim for § 1983 conspiracy, a plaintiff must allege (1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict

an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages."
(citing *Ciambriello*, 292 F.3d at 324-25)).

Plaintiff fails to state this claim for two reasons. First, he fails to offer any nonconclusory
facts establishing either the existence of a conspiracy or a meeting of the minds necessary to
support such a claim. *See Ortiz v. Ledbetter*, No. 19-CV-02493, 2020 WL 2614771, at *6
(S.D.N.Y. May 22, 2020); *Liner v. Fischer*, No. 11-CV-06711, 2013 WL 4405539, at *6 (S.D.N.Y.
Aug. 7, 2013) ("[B]are statements that Defendants 'conspired' are insufficient to state an
actionable claim for conspiracy."). Second, this claim is barred by the intracorporate conspiracy
doctrine, as each Defendant worked for the same corporate entity (i.e., DOCCS) and was acting
within the scope of their employment in connection with the alleged conduct. *See Arriaga*, 2021
WL 5449849, at *10 ("State officials carrying out an agency's business cannot conspire with one
another as a matter of law under § 1983." (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.
1977))); *Pajazetovic v. City of Utica, N.Y.*, No. 18-CV-01496, 2021 WL 4440473, at *11
(N.D.N.Y. Sept. 27, 2021) ("Courts in the Second Circuit recognize the 'intracorporate conspiracy
doctrine,' which holds that the 'officers, agents, and employees of a single corporate entity are
legally incapable of conspiring together.'" (quoting *Peck v. Cty. of Onondaga, N.Y.*, No. 21-CV-
00651, 2021 WL 3710546, at *15 (N.D.N.Y. Aug. 20, 2021))); *Little v. City of New York*, 487 F.
Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the 'intracorporate conspiracy' doctrine, the
officers, agents, and employees of a single corporate entity, each acting within the scope of her
employment, are legally incapable of conspiring together."); *Williams v. Fischer*, No. 09-CV-
01258, 2011 WL 1812527, at *10 (N.D.N.Y. Feb. 9, 2011) (dismissing conspiracy claim under the
intracorporate conspiracy doctrine where all defendants were employees of DOCCS), *adopted
by* 2011 WL 843919 (N.D.N.Y. Mar. 8, 2011). The conspiracy claim is, accordingly, dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART. All claims are dismissed except for the Fourteenth Amendment procedural due process claim against Gutwein. That claim shall proceed to discovery. Gutwein is directed to serve and file an Answer within twenty-one days of the date of this Order.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 35, terminate Annucci, Venettozzi, LaManna, and Malave from the docket in this action, and mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated:   White Plains, New York
        January 31, 2022

_____
PHILIP M. HALPERN
United States District Judge

18